IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| JUNIOR ALEX VELASQUEZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | 1:17CV865 |
| | ) | |
| SONOCO DISPLAY & | ) | |
| PACKAGING, LLC and | ) | |
| DEBBIE'S STAFFING SERVICES, INC., | ) | |
| | ) | |
| Defendants. | ) | |

MEMORANDUM OPINION AND RECOMMENDATION OF
UNITED STATES MAGISTRATE JUDGE

This matter comes before the Court on a Motion to Dismiss Second Amended Complaint [Doc. #33] by Defendant Debbie's Staffing Services, Inc. ("Debbie's Staffing"). In this action, Plaintiff Junior Alex Velasquez ("Plaintiff") brings five claims for relief against Debbie's Staffing and Defendant Sonoco Display & Packaging, LLC ("Sonoco") as alleged joint employers: (1) a claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII") based on alleged racial and national origin discrimination, (2) a claim under Title VII for retaliation, (3) a claim under 42 U.S.C. § 1981 on the basis of race, (4) a claim for violation of the Retaliatory Employment Discrimination Act ("REDA"), N.C. Gen. Stat. § 95-241, based on alleged retaliation for complaining about matters covered by the Occupational Safety and Health Act of North Carolina, and (5) a claim for wrongful discharge based upon

1

a violation of REDA, or alternatively, the North Carolina Equal Employment Practices Act, N.C. Gen. Stat. § 143-422.1, *et seq*.

I.     FACTS, CLAIMS, AND PROCEDURAL HISTORY.

Plaintiff is a Hispanic male born in El Salvador, now a Lawful Permanent Resident of the United States. He alleges that in 2014, he began work as a forklift driver for Sonoco at Sonoco's locations in Rural Hall, North Carolina and Winston-Salem, North Carolina. (Compl. [Doc. #19] ¶¶ 1, 26, 28.) According to the Second Amended Complaint ("Complaint"), Debbie's Staffing provides temporary staffing services to Sonoco, and had on-site offices and employees at the Sonoco locations to handle staffing for Sonoco. Plaintiff alleges that Debbie's Staffing issued his paychecks, and that both Debbie's Staffing and Sonoco employees supervised him and had the right to terminate his employment. (Id. ¶¶ 15, 31-32.)

Plaintiff alleges that he performed all assignments, never received write-ups, and was given several raises until he was terminated in October 2016. (Id. ¶¶ 35, 36, 134.) According to the Complaint, a Sonoco supervisor began making derogatory comments on account of Plaintiff's race and national origin shortly after Defendant began working at Sonoco. (Id. ¶¶ 12, 41.) Plaintiff alleges that he was called a variety of derogatory names and comments based upon his race or national origin, including: "Rodriguez," "an illegal immigrant," "El Taco Loco," "Bin Laden," "Terrorist," "Julio Iglesias," "Jalapeno," and "wetback," and comments including, "This is America. Why do we hire immigrants?," "Speak English," and "Go back

2

across the border." (Id. ¶¶ 41-45, 51, 52, 57, 58, 61.) Plaintiff alleges that these comments were made by Sonoco employees and reported to Sonoco's supervisors, managers and lead men[1], identified as white males, who took no action to stop the comments. (Id. ¶¶ 12, 41, 47-61, 63-66, 68-72.) The Complaint alleges that Plaintiff sent an email on April 16, 2016, complaining to Sonoco "that minorities were being discriminated against in the way they were treated at work," but that Sonoco failed to take action to stop the harassment. (Id. ¶¶ 71, 72.)

As to matters pertaining to worker safety, Plaintiff made several complaints about various safety issues related to the forklifts. (Id. ¶¶ 73-75, 77-81, 83-85.) Plaintiff alleges that on April 17, 2016, he submitted a written request to Sonoco for a meeting about safety rules and the need for such rules to apply to both Sonoco employees and Debbie's Staffing employees. (Id. ¶¶ 86-87.) Plaintiff next contends that during a Sonoco staff meeting in the late summer of 2016, he complained to a Sonoco manager about the lack of ventilation in the warehouse, "that there were dangerous, hot and dusty conditions," and inquired if "they could have the doors at least halfway open so that more air would circulate and it would not be hazardous to the workers." (Id. ¶¶ 94-100.) According to Plaintiff, a Sonoco manager responded by telling him, "[i]f you don't like it, go find another job." (Id. ¶ 103.) The Complaint alleges Plaintiff advised a Sonoco lead man that "he was going to report the issue to the Department of Labor," and further alleges his belief that Sonoco corporate policy required his complaint to be

---

[1] According to Plaintiff, a "lead man," along with supervisors and managers, "exercised management authority for Sonoco, including by making decisions regarding hiring, scheduling, disciplining, and terminating Plaintiff." (Id. ¶ 13.) All individuals holding the title of lead man in the Complaint are identified as employees of Sonoco. (Id. ¶ 12.)

3

reported up the chain of command. (Id. ¶¶ 105, 106.) According to Plaintiff, "it became generally known in the workplace" that he made a complaint to the Department of Labor because he told a Sonoco lead man he was going to complain, and further told a co-worker that he had made a complaint. (Id. ¶ 114.) Plaintiff contends that his complaint to the Department of Labor was via tweet he sent as follows: "@USDOOL one question, is it okay for a workplace to be sealed close in time like summer over a 100 degrees with not [sic] ventilation." (Id. ¶ 110) (alteration in original). Plaintiff alleges that after his complaint to the Department of Labor, the warehouse doors were left open with screens. Plaintiff alleges that the on-site supervisors for Debbie's Staffing were aware of his complaint and that "management personnel at Debbie's Staffing also commented to Plaintiff when the doors were opened" and "told Plaintiff that the doors were now opened because of him." (Id. ¶¶ 116, 118-119.)

According to the Complaint, "[o]n or about October 20, 2016, [a Sonoco supervisor] told Plaintiff that Lead Man Bullins [a Sonoco lead man] was going to fire Plaintiff," a statement that was later confirmed by another Sonoco supervisor telling Plaintiff that Lead Man Bullins had "decided to terminate Plaintiff." (Id. ¶¶ 126-129.) The next day, Plaintiff questioned a Debbie's Staffing' onsite supervisor at Sonoco, Julicia Thomas, about his employment status, and "Supervisor Thomas looked on her computer and said she received an e-mail from Lead Man Roger Bullins saying that Plaintiff was being terminated." (Id. ¶ 132.) According to the Complaint, the Debbie's Staffing supervisor expressed her disagreement with the decision but

4

nevertheless "took Plaintiff's [Sonoco] badge and indicated to him that he was terminated." (Id. ¶¶ 30, 130-133.) According to the Complaint, Plaintiff advised Julicia Thomas that he wanted to file a complaint of racial/ethnic harassment. He was directed to the Debbie's Staffing's offices downtown. The following day, he went to the downtown location and spoke to a Debbie's Staffing senior manager. The Debbie's Staffing senior manager told Plaintiff that he would discuss Plaintiff's complaint with a Sonoco manager. (Id. ¶¶ 135-137.) A few days later, Plaintiff was called into a meeting with a Debbie's Staffing vice-president who asked questions about the alleged "discrimination and harassment" at Sonoco. The Debbie's Staffing vice-president advised Plaintiff that a report would be sent to Sonoco's Human Resources department and that Debbie's Staffing managers would report back to him on what Sonoco advised. (Id. ¶¶ 138-39.) Shortly thereafter, a Debbie's Staffing vice-president contacted Plaintiff and told him that, according to Sonoco, he was terminated because he had "interrupted [a Sonoco Supervisor] during a meeting." (Id. ¶ 142.) Plaintiff alleges that this was the meeting in the late summer of 2016 during which he complained of the closed warehouse doors creating a safety concern. (Id. ¶ 142.) Plaintiff contends that despite his protests, Debbie's Staffing upheld the termination decision.

Plaintiff filed an EEOC charge against Sonoco and Debbie's Staffing. In Sonoco's response to the EEOC charge, Sonoco alleged that "Sonoco played no role in the decision to terminate Plaintiff." (Id. ¶ 145.) According to the Complaint, Sonoco specifically took the

5

position that "the decision to terminate Mr. Velasquez' assignment was made by Debbie's Staffing, and Sonoco had no input in the decision." (Id. ¶ 146.)

Plaintiff contends that Sonoco and Debbie's Staffing discriminated against him by creating a hostile work environment and terminating him because of his race and/or national origin, and retaliated against him by terminating him for complaining about the discrimination and for reporting work safety issues at Sonoco. (Id. ¶¶ 148-149, 151-204.)

Defendant Sonoco filed an Answer, and this case proceeded to discovery, with a deadline for the close of discovery of October 1, 2018. Defendant Debbie's Staffing did not file an Answer, but instead filed a Motion to Dismiss, contending that all of Plaintiff's claims relate to actions by Sonoco employees, and that Plaintiff failed to state any claim against Debbie's Staffing. However, discovery was not stayed, and discovery is currently proceeding as to both Defendants. For the reasons set out below, the Court concludes that the issues raised by Debbie's Staffing are best resolved on a more complete record after discovery, rather than on the present motion to dismiss. Therefore, the Court will recommend that the motion to dismiss be denied, without prejudice to further consideration of these issues on dispositive motions after the completion of discovery.

II. DISCUSSION

A. Standard for Motion to Dismiss

The Supreme Court has held that "an employment discrimination plaintiff need not plead a prima facie case of discrimination . . . to survive [a] motion to dismiss," because "[t]he

6

prima facie case . . . is an evidentiary standard, not a pleading requirement." Swierkiewicz v. Sorema N.A., 534 U.S. 506, 510, 515 (2002). Instead, that "the ordinary rules for assessing the sufficiency of a complaint apply." Id. Under the ordinary rules that now apply, a plaintiff fails to state a claim on which relief may be granted under Federal Rule of Civil Procedure 12(b)(6) when the complaint does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see also Woods v. City of Greensboro, 885 F.3d 639 (4th Cir. 2017). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. Thus, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level," thereby "nudg[ing] their claims across the line from conceivable to plausible." Twombly, 550 U.S. 544, 555, 570 (2007).

   1. Title VII and § 1981 Discrimination Claims

Plaintiff claims that Sonoco and Debbie's Staffing discriminated against him by subjecting him to a hostile work environment and ultimately terminating his employment with Sonoco because of his race and national origin. As part of this claim, Plaintiff alleges that he was subjected to pervasive, derogatory comments related to his race and national origin. Title VII makes it "an unlawful employment practice for an employer . . . to discharge any individual, or otherwise to discriminate against any individual with respect to his

7

compensation, terms, conditions or privileges of employment, because of such individual's race . . .or national origin" 42 U.S.C. § 2000e-2(a).[2] An employer will be held liable for racial or national origin discrimination if "a protected characteristic [is] a 'motivating factor' in an employment decision." E.E.O.C. v. Abercrombie & Fitch Stores, Inc., 135 S. Ct. 2028, 2032 (2015) (quoting 42 U.S.C. § 2000e-2(m)). In addition, "[a] hostile [work] environment exists 'when the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create and abusive working environment.'" Boyer-Liberto v. Fontainebleau Corp, 786 F.3d 264 (4th Cir. 2015) (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993)).

In this case, Debbie's Staffing contends Plaintiff has not pled "an adverse action by [Debbie's Staffing] that can be linked to his claims of discrimination" or "that [Debbie's Staffing] was involved in or knew about any of the allegedly discriminatory statements" by Sonoco employees. (Memorandum [Doc. #34] at 7-9.) In response, Plaintiff first contends that Debbie's Staffing is liable for the conduct of Sonoco because Debbie's Staffing and Sonoco are "joint employers" (Response [Doc. #36] at 5). In addition, Plaintiff further contends that Debbie's Staffing "violated its duty to investigate the discrimination and reverse the decision to terminate Plaintiff." (Id. at 5-7.)

---

[2] Plaintiff asserts a separate claim under 42 U.S.C. § 1981 (Count III). "Most [42 U.S.C.] § 1981 actions involve employment discrimination- n claims, and courts analyze such cases employing the same statutory scheme used in cases brought under Title VII." Baltimore-Clark v. Kinko's Inc., 270 F. Supp. 2d 695, 698–99 (D. Md. 2003) (citing Hawkins v. PepsiCo, Inc., 203 F.3d 274, 278 (4th Cir. 2000); Gairola v. Commonwealth of Virginia Dept. of Gen. Serv., 753 F.2d 1281, 1285–86 (4th Cir.1985)).

8

With respect to the potential liability as a "joint employer," Defendant Debbie's Staffing notes that even if it is a joint employer with Sonoco, it is not liable for the conduct of Sonoco employees. In Butler v. Drive Automotive Industries of America Inc., 793 F.3d 404 (4th Cir. 2015), the Fourth Circuit held "that multiple entities may simultaneously be considered employers for the purposes of Title VII," and the Fourth Circuit adopted a hybrid test for determining whether a company can be considered a joint employer. Id. at 408, 410, 414. However, the Fourth Circuit did not address the extent to which the liability of one joint employer rendered the other liable. The Fourth Circuit did cite to other cases adopting the joint employer doctrine in the context of Title VII claims, and those cases do not impute liability from one joint employer to the other. Id. at 408-09; Torres-Negron v. Merk & Co., 488 F.3d 34, 40 n. 6 (1st Cir. 2007) ("Thus, a finding that two companies are an employee's 'joint employers' only affects each employer's liability to the employee for their *own* actions, not for each other's actions as [plaintiff] would have us hold."(emphasis in original)); Williams v. Grimes Aerospace Co., 988 F. Supp. 925, 933, 938 (D.S.C. 1997) ("Though Grimes and Columbia Staffing, as discussed below, may each be individually liable as Williams' employer, they are not liable for one another's acts under agency principles," and "when an employee claims discrimination against two joint employers, she must show that [each] defendant knew or should have known of the discriminatory conduct and that it failed to take those corrective measures within its control." (internal quotation omitted)); see also Burton v. Freescale Semiconductor, Inc., 798 F.3d 222, 229 (5th Cir. 2015) (noting that "[a] staffing agency is liable

9

for the discriminatory conduct of its joint-employer client if it participates in the discrimination, or if it knows or should have known of the client's discrimination but fails to take corrective measures within its control," and refusing to dismiss claim against staffing agency where the "undisputed evidence is that Manpower personnel carried out the actual termination. Further, Manpower terminated Burton's assignment after professing a belief that the termination was legally dubious.").[3] These holdings appear to be consistent with EEOC published guidance, cited by Plaintiff, which states:

> The [staffing] firm is liable if it participates in the client's discrimination . . . The [staffing] firm is also liable if it knew or should have known about the client's discrimination and failed to undertake prompt corrective measures within its control."

Equal Employment Opportunity Commission, EEOC Notice No. 915.002, Enforcement Guidance: Application of EEO Laws to Contingent Workers Placed by Temporary Employment Agencies and Other Staffing Firms, 1997 WL33159161, at *11 (Dec. 3, 1997).[4]

---

[3] The Court of Appeals for the Fifth Circuit further observed that:

> "Manpower's argument that contractually it had 'no choice but to comply' with Freescale's demand that Burton's assignment be terminated does not alter this analysis. . . . [A] purported contractual obligation to fire an employee on a discriminatory basis is no defense. As an employer, Manpower had an independent obligation to comply with the ADA, and a contractual obligation to discriminate would be unenforceable."

Burton v. Freescale Semiconductor, Inc., 798 F.3d 222, 229 (5th Cir. 2015).

[4] As noted by Debbie's Staffing, Plaintiff does not allege that Debbie's Staffing is liable under the "integrated employer" doctrine or some other theory directly attributing the conduct of Sonoco's employees to Debbie's Staffing. See Butler v. Drive Automotive Industries of America Inc., 793 F.3d 404, 408 n.3 (4th Cir. 2015); William v. Grimes Aerospace Co., 988 F. Supp. 925, 936 (D.S.C. 1997).

In light of this standard, Debbie's Staffing contends that Plaintiff has failed to state a claim for discrimination against Debbie's Staffing because he has failed to allege that race or national origin played any role in his termination, or that Debbie's Staffing knew about any of the allegedly discriminatory statements by Sonoco employees, or that Debbie's Staffing was involved with the decision to terminate his assignment at Sonoco. However, the Second Amended Complaint describes racially discriminatory statements by Sonoco managers and employees over a substantial period of time, both to support a claim of hostile work environment against Sonoco and as evidence of a racially discriminatory motive in the decision to terminate Plaintiff. These allegations specifically include racially discriminatory statements by the same Sonoco supervisor who later requested Plaintiff's termination. (Compl. [Doc. #19] at ¶¶ 47, 68, 69, 132.) Plaintiff alleges that he complained to Debbie's Staffing about the racial discrimination at least on October 21, 2016, and that the on-site supervisor for Debbie's Staffing "disagreed with the reason being given for letting him go," but that Debbie's Staffing nevertheless made the decision to terminate Plaintiff's work at Sonoco and took his Sonoco badge, and then ultimately confirmed that decision two weeks later, on November 2, 2016. Thus, Plaintiff alleges that Debbie's Staffing confirmed and implemented Plaintiff's termination from Sonoco, even after being informed of the racially discriminatory basis for Sonoco's request, and even though the Debbie's Staffing manager on-site disagreed with the purported reasons being given by Sonoco. (Compl. [Doc. #19] ¶¶ 133, 134, 145, 149.) In addition, as noted above, the Second Amended Complaint alleges that Defendant Sonoco has

11

taken the position that it did not employ Plaintiff and that Debbie's Staffing was responsible for the decision to terminate Plaintiff's assignment. Thus, the Complaint alleges a dispute between the Defendants as to which entity was ultimately responsible for Plaintiff's termination. The details of the decision-making process and of the contractual arrangements between the parties is not before the Court, and appears to involve a fact-intensive inquiry best undertaken after the opportunity for discovery on a more complete record. Thus, dismissal of these claims at this stage is premature.[5] For these reasons, the Court will recommend that the Motion to Dismiss be denied as to Counts I and III.

2. Title VII Retaliation

Title VII's anti-retaliation provision imposes liability on an employer who discriminates against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he had made a charge, testified, assisted, or participated in any manner in an investigation or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). A plaintiff asserting a retaliation claim under Title VII must establish: (1) engagement in a protected activity; (2) adverse employment action; and (3) a causal link between the protected activity and the employment action. DeMasters v. Carilon Clinic, 796 F.3d 409, 416-17 (4th Cir. 2015) ("Title VII forbids employment discrimination based on 'race, color, religion, sex, or national origin,' 42 U.S.C. § 2000e–2(a), and its anti-retaliation provision serves to prevent

---

[5] Similarly, to the extent Debbie's Staffing contends that it conducted an investigation and did not substantiate Plaintiff's claims, or that it offered Plaintiff another assignment and therefore cannot be liable for alleged discriminatory discharge, those contentions go beyond the scope of a motion to dismiss and are more appropriately considered on dispositive motions after the close of discovery.

12

[ ] an employer from interfering (through retaliation) with an employee's efforts to secure or advance enforcement of the Act's basic guarantees." (internal quotation omitted)). Title VII retaliation claims involve traditional principles of "but-for causation," requiring "proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." University of Texas Southwestern Med. Cent. v. Nassar, 570 U.S. 338, 360 (2013). However, as noted above, "[a] plaintiff is not required to plead facts that constitute a prima facie case in order to survive a motion to dismiss . . . , [but] factual allegations must be enough to raise a right to relief above the speculative level." Rigg v. Urana, 113 F. Supp. 3d 825, 829 (M.D.N.C. 2015).

Plaintiff alleges Debbie's Staffing retaliated against him by terminating him, "[a]s set forth above," after he made oral and written reports to "Defendants' management staff." (Complaint [Doc. #19] ¶ 161.) Debbie's Staffing contends that it was not aware of any complaints or reports by Plaintiff until October 21, 2016, when the initial decision was communicated to him. (Id. ¶¶ 129-135.) However, as noted above, Plaintiff alleges that Debbie's Staffing then considered his complaints and then confirmed the decision to terminate his work at Sonoco. Thus, Plaintiff alleges that Debbie's Staffing adopted and confirmed the retaliatory decision of Sonoco, and that Debbie's Staffing was aware of his complaints of racial discrimination by October 21, 2016, and subsequently made the final decision to terminate him. Debbie's Staffing contests its involvement in any discriminatory or retaliatory decision, but these are determinations that require consideration of facts beyond the allegations in the

13

Complaint, and thus go beyond the scope of the present Motion to Dismiss. Therefore, the Court concludes that these issues are best determined on a more complete factual record on summary judgment motions, rather than on the present Motion to Dismiss.

3. Retaliatory Employment Discrimination Act

REDA was enacted "in order to provide workers [in North Carolina] with a method to remedy unsafe and illegal working conditions without being punished by their employer." Delon v. McLaurin Parking Co., 367 F. Supp. 2d 893, 902, aff'd 146 Fed. Appx. 655 (4th Cir. 2005). North Carolina courts have articulated three elements that a plaintiff must show to proceed on a REDA claim: (1) the plaintiff exercised a right protected by the statute; (2) the plaintiff suffered an adverse employment action; and (3) the adverse employment action occurred because the plaintiff exercised a protected right. Wiley v. United Parcel Serv., Inc., 164 N.C. App. 183, 186 (2004). Plaintiff alleges Debbie's Staffing violated REDA by terminating him in retaliation for his complaints about multiple violations of the Occupational Safety and Health Act of North Carolina ("OSHANC"). See Jurrissen v. Keystone Foods, LLC, No. 1:08cv128, 2008 WL 3925086 (M.D.N.C. August 20, 2008); N.C.G.S. § 95-241(a)(1)(b).

Debbie's Staffing argues that Plaintiff cannot show he exercised rights under REDA because his complaints to his manager and supervisors, including a complaint at a safety meeting, and his "sending a tweet" to the USDOL's account, each do not constitute a protected activity. See Hadley v. Duke Energy Progress, LLC, 677 F. App'x 859, 862 (4th Cir.

14

2017) (noting that a claim under REDA requires "more than simply complaining to a manager"); Delon, 367 F. Supp. 2d at 902 (finding that plaintiff's "complaint to a manager about a supervisor" was not an action protected by REDA); Pierce v. The Atlantic Group, Inc., 219 N.C. App. 19, 28 (2012) (finding that a plaintiff merely talking to his own supervisor about certification requirements is not sufficient to constitute a protected activity under REDA). However, the filing of a formal claim is not necessary, and an employee potentially "engages in protected activity under REDA" when he "in good faith . . . threatens to" file a claim or initiate any inquiry or investigation, or "provide information to any person" with respect to OSHANC. Eschert v. City of Charlotte, 3:16cv295, 2017 WL 3633275, at *4 (W.D.N.C. August 23, 2017) ("[A]lthough Plaintiff did not file a formal claim under OSHA, she did more than merely complain to an internal supervisor. Evidence at trial showed that Plaintiff complained externally about health and safety concerns in a public building to her father-in-law, Ray Eschert, and to City Councilwoman Claire Fallon."); Crespo v. Delta Apparel, Inc., 5:07cv65, 2008 WL 2986279, at *6 (W.D.N.C. July 31, 2008) ("Plaintiff does not expressly allege that he threatened to file a complaint under OSHANC or otherwise request an inspection. However, Plaintiff's pleading does not preclude the possibility that a threat to take more formal action was a part of Crespo's "reporting" to his employer. . . . Because these questions can easily be resolved at summary judgment, the Court will not dismiss Plaintiff's wrongful discharge cause of action at this time."); see Cromer v. Perdue Farms, Inc., 900 F. Supp. 795, 801 n.6 (M.D.N.C. 1994), aff'd, 65 F.3d 166 (4th Cir. 1995)

15

(dismissing claim at summary judgment where Plaintiff admitted there was no safety complaint and no threat to initiate such complaint); Jurrissen v. Keystone Foods, LLC, 2008 WL 3925086, at *5-6 (finding that where the plaintiff "alleges that he specifically communicated with Defendant's internal auditor about an ongoing investigation into Defendant's health and safety practices . . . [i]n the exercise of caution, and because of the liberal standard of notice pleading, it is not appropriate to dismiss the REDA claim at this juncture. The parties should be allowed to conduct discovery to develop this claim and provide the court with more details regarding Plaintiff's communications with the internal auditor and to develop facts regarding the alleged 'ongoing investigation' into Defendant's safety practices").

Plaintiff contends that the Complaint alleges that he advised Sonoco supervisors of multiple OSHANC violations, including a lack of ventilation in the warehouse, that he made a written inquiry about safety issues to Sonoco, that he told a Sonoco lead man of his intention to submit a report to the USDOL, that he sent a tweet to the USDOL about workplace conditions, and that this became generally known at Sonoco and was known to an on-site Debbie's Staffing supervisor. (Plaintiff's Response [Doc. #36] at 14-17; Compl. [Doc. #19] ¶¶ 73-120.) Plaintiff alleges that Debbie's Staffing then ultimately decided to terminate him, explicitly because he was alleged to have interrupted a meeting when he complained of safety violations. The allegations are sufficient at this stage of the litigation to allege Plaintiff engaged in a protected activity under REDA and that he was ultimately terminated because of that activity. To the extent that Debbie's Staffing contends that some of its supervisors or

16

managers did not know of the prior safety complaints and/or did not know that the interruption at the meeting related to safety violation complaints, those contentions relate to specific factual disputes that would potentially require conversion of the present motion into one for summary judgment to allow Plaintiff the opportunity to respond, and the Court concludes that these issues are better addressed on dispositive motions at the conclusion of discovery. For these reasons, the Court will recommend denial of the Motion to Dismiss as to Count IV.

    4. Common Law Wrongful Termination

Plaintiff's final claim (Count V) is for wrongful termination under North Carolina common law. This claim is inextricably linked to Plaintiff's REDA and Title VII claims. Specifically, North Carolina courts have recognized that retaliating against an employee for exercising rights under NCOSHA is against public policy and can simultaneously be the basis for both a common law wrongful termination claim and a REDA claim. White v. Cochran, 216 N.C. App. 125, 133 (2011). Similarly, N.C. Gen. Stat. § 143-422.2 states that "[i]t is the public policy of this State to protect and safeguard the right . . . of all persons to seek, obtain and hold employment without discrimination . . . on account of race, religion, color, national origin, age, sex or handicap by employers." Accordingly, because the Court is recommending that Plaintiff's REDA, Title VII, and Section 1981 claims relating to his discharge should be considered after discovery, the Court will recommend that the Motion be denied as to the common law wrongful termination claim (Count V) as well.

III. CONCLUSION

For the foregoing reasons, IT IS RECOMMENDED that Debbie's Staffing Services, Inc.'s Motion to Dismiss the Second Amended Complaint [Doc. #33] be DENIED pending the completion of discovery, without prejudice to further consideration of these issues on summary judgment motions following the close of discovery.

This, the 11th day of April, 2018.

/s/ Joi Elizabeth Peake
United States Magistrate Judge